1 | GREGORY S. CORDREY (Bar No. 190144)
*gcordrey@jmbm.com*
2 | ROD S. BERMAN (Bar No. 105444)
*rberman@jmbm.com*
3 | SHENEL OZISIK (Bar No. 324215)
*sozisik@jmbm.com*
4 | JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
5 | Los Angeles, California 90067-4308
Telephone:  (310) 203-8080
6 | Facsimile:  (310) 203-0567

7 | Attorneys for Plaintiff Theragun, Inc.

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

JMBM | Jeffer Mangels Butler & Mitchell LLP

| | |
|---|---|
| THERAGUN, INC, a Delaware corporation, | Case No.:  2:21-cv-01006-JAK-PD |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| v. | **1.) FEDERAL TRADE DRESS INFRINGEMENT;** |
| PENTHE COMPANY; a Delaware corporation; and DOES 1 through 10, inclusive, | **2.) COMMON LAW TRADE DRESS INFRINGEMENT;** |
| Defendants. | **3.) INFRINGEMENT OF U.S. PATENT NOS. D849,261, D861,182, D869,387, D850,640, D859,680, and D890,943** |
| | **4.) UNFAIR BUSINESS PRACTICES, CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Theragun, Inc. ("Theragun") brings this action against defendants Penthe Company and Does 1-10, inclusive (collectively "Defendants").

## **THE PARTIES**

1.      Theragun is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 6100 Wilshire Blvd., Ste. 200, Los Angeles, CA 90048.

2.      Theragun is informed and believes and thereon alleges that defendant Penthe Company is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Delaware, with offices at 1209 North Orange Street, Wilmington, Delaware 19801.

3.      Theragun is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names and capacities.  Theragun will amend this Complaint to allege their true names and capacities when ascertained, along with the appropriate charging allegations.

4.      Theragun is informed and believes and thereon alleges that Defendants are manufacturing, using, selling, or offering for sale within the U.S., or importing into the U.S., the infringing massage gun products described below.

5.      Theragun is informed and believes and thereon alleges that each of the Defendants conspired and acted in concert with one another to commit the wrongs against Theragun alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other.  Theragun is further informed and believes and on that basis avers that, in doing the things alleged in this Complaint, each of the Defendants was acting within the scope of authority conferred upon that Defendant by the consent, approval, and/or ratification of the other Defendants.

/ / /

/ / /

JMBM | Jeffer Mangels Butler & Mitchell LLP

## JURISDICTION AND VENUE

6.      This is an action for (a) trade dress infringement under Section 43 of the Lanham Act, 15 U.S.C. §1125; (b) trade dress infringement under the laws of the state of California; (c) patent infringement under the patent laws of the United States, 35 U.S.C. § 271; and (d) unfair competition pursuant to California Business and Professions Code Section 17200, *et seq.*

7.      This Court has subject matter jurisdiction over the trade dress and patent claims in this action pursuant to 28 U.S.C. §1338(a) and 15 U.S.C. §1121. This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. §1367 because the claims are so related to Theragun's claims under federal law that they derive from a common nucleus of operative fact and form part of the same case or controversy.

8.      This Court has personal jurisdiction over Defendants because each of them has committed and continues to commit acts of infringement in violation of 15 U.S.C. §§ 1114 and 1125 and 35 U.S.C. § 271, and places infringing products into the stream of commerce, with knowledge or understanding that such products are sold in the State of California, including in this judicial district.  The acts of Defendants cause injury to Theragun within this judicial district.

9.      Upon information and belief, Defendants derive substantial revenue from the sale of infringing products within the State of California, including this judicial district, expect their actions to have consequences within this district, and derive substantial revenue from interstate and international commerce.

10.      Upon information and belief, Defendants sell substantial amounts of infringing products to consumers who reside within the State of California through its internet-based ecommerce website and internet websites operated by others, such as Amazon.com and https://vybepercussion.com.

11.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims

1   occurred in this judicial district where Defendants have committed and continue to
2   commit infringing acts, including, without limitation, using their infringing trade
3   dress to market and sell the infringing products to consumers located within this
4   judicial district.   Further, on information and belief, an appreciable portion of
5   Defendants' customers reside in Los Angeles.   In addition, venue is proper because
6   Theragun's principal place of business is in this judicial district and Theragun suffered
7   harm in this judicial district.

8                            **GENERAL ALLEGATIONS**

9        12.    Theragun is in the business of developing, manufacturing and selling
10  high-quality, innovative percussive therapy devices.   Theragun invests considerable
11  time, effort and money in developing and protecting its intellectual property,
12  including the trade dress of its products.

13       13.    Since at least as early as May 31, 2015, Theragun has used a distinctive
14  blue color in presenting its trademarks, in its marketing and advertising, and on its
15  massage gun products.

16       14.    As a result of the use of its distinctive blue color, Theragun has
17  developed trade dress rights in the blue color, the use of which is pervasive on
18  Theragun's website, advertising, and as applied to its massage gun products and
19  packaging as specifically described below (the "Trade Dress").

20       15.    Theragun's distinctive blue color used to depict textual elements on
21  black product packaging, as shown, for example, in the images below:

  

Jeffer Mangels
Butler & Mitchell LLP
JMBM

16.     Theragun has applied its distinctive blue color to substantially all of the handle portion of its massage gun product, as shown in the image below.



17.     Theragun has also applied its distinctive blue color to the entirety of the inner side of the handle portion of its massage gun product, as shown in the image below:



18.     Theragun has applied its distinctive color blue as an accent color on its massage gun products, as shown in the images below, namely, in a band encircling the arm to which the massage head attachments are attached and to the circle above said arm.

   

FIRST AMENDED COMPLAINT

JMBM | Jeffer Mangels
Butler & Mitchell LLP

19.     The Trade Dress, namely, the application of a distinctive color of blue to various parts of its products or packaging, is not functional: it does not provide a utilitarian advantage, a plethora of alternatives colors are available for use, and its use is not the result of a simple or inexpensive method of manufacture. Defendant has suggested that the color blue provides a "utilitarian advantage based on psychological principles." Theragun alleges, however, that there is no established science connecting the use of certain colors to the production of certain moods, feelings, or emotions in a person viewing those colors. Theragun further alleges that the use of a given color on a product cannot reliably produce a certain emotional response from consumers. Theragun selected and uses the color blue for the purpose of identifying its products and distinguishing them from the products of third parties.

20.     The Trade Dress is either inherently distinctive, or, through Theragun's continuous use and promotion, has acquired distinctiveness, and the Trade Dress is uniquely associated with Theragun and its massage gun products.  Theragun has used its unique color blue continuously since it launched its first massage gun product. Theragun has offered certain special edition products with accents in other colors, *e.g.*, a massage gun with red accents in the location where blue accents typically appear is being offering in collaboration with (RED) to raise funds for health systems in sub-Saharan Africa. Theragun also omits the blue accents from certain of its basic product lines. Nonetheless, the blue accents, described above, are consistently applied to Theragun products, and Theragun's use of the color blue is consistent and pervasive.

21.     Theragun has sold millions of dollars of products bearing its distinctive color blue. It has spent millions of dollars to promote its products bearing its distinctive color blue. Theragun products bearing the Trade Dress and/or Theragun's distinctive blue color are used by numerous celebrities and professional athletes, have been the subject of extensive press and advertising, and have been used on the field during a Super Bowl and on the court during the NBA Finals. As a result of

Theragun's extensive advertising and promotion and the widespread, and high profile, use of Theragun's Trade Dress, including as described above, Theragun's Trade Dress is associated by the public exclusively with Theragun and its products and is used by the public as an indicator of the origin and quality of Theragun's massage gun products.

22.   Additionally, Defendants' have copied Theragun's Trade Dress, as have third parties.  Such copying is further evidence that Theragun's Trade Dress has secondary meaning.

23.   As is apparent from the images of Defendants' products set forth in Paragraph 42, below, Defendants are using a virtually identical blue color on their massage gun products. In fact, apparently recognizing the strength and value of Theragun's Trade Dress, Defendants have applied the blue color to their products in virtually the same locations and positions as that blue color is applied to the Theragun products.

24.   Both parties' goods are massage guns; thus the goods are legally identical and directly competitive.  It follows that the consumers and the channels of trade and marketing are the same for both parties.  Additionally, both parties are selling their products through online retail platforms.

25.   The Theragun Trade Dress is a strong mark, for the same reasons discussed in Paragraphs 20-22, above.

26.   It is evident that, perhaps recognizing the strength and value of the Theragun Trade Dress, Defendants have intentionally and deliberately attempted to replicate it on their competing products.

27.   In view of the foregoing, Defendants' application of the same blue color to the same products in virtually the same location and the same positions as that blue color is applied to the Theragun products is likely to cause confusion or mistake, or to deceive members of the public into believing that Defendants' massage gun products are approved, sponsored, endorsed, or licensed by, or affiliated, connected

JMBM Jeffer Mangels Butler & Mitchell LLP

or otherwise associated with Theragun, which is not the case. Such confusion, mistake, or deception will inevitably continue after the sale of the products, as consumers continue to encounter Defendants' infringing products at gyms, in therapists or doctors' offices, or in other post-sale contexts, and as a result of such post-sale confusion the harm to Theragun's reputation will continue and be amplified.

28. On May 21, 2019, the United States Patent and Trademark Office issued United States Patent Number D849,261, entitled "Massage Element" (hereinafter "the '261 Patent"). A true and correct copy of the '261 Patent is attached hereto as Exhibit 1.

29. Theragun is the owner of the '261 Patent. The '261 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 1 below. The '261 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '261 Patent is novel and non-obvious.

**Fig. 1**

30. On September 2, 2019, the United States Patent and Trademark Office issued United States Patent Number D861,182, entitled "Massage Element" (hereinafter "the '182 Patent"). A true and correct copy of the '182 Patent is attached hereto as Exhibit 2.

31. Theragun is the owner of the '182 Patent. The '182 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 2 below. The '182 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '182 Patent is novel and non-obvious.

1

2

3

4

5

6



**Fig. 2**

7    32.    On December 10, 2019, the United States Patent and Trademark Office

8  issued United States Patent Number D869,387, entitled "Rechargeable Battery"

9  (hereinafter "the '387 Patent").  A true and correct copy of the '387 Patent is attached

10  hereto as Exhibit 3.

11    33.    Theragun is the owner of the '387 Patent.  The '387 Patent pertains to a

12  particular ornamental design for a rechargeable battery for percussive massage

13  devices, including as depicted in Fig. 3 below.  The '387 Patent is presumed to be

14  valid and is *prima facie* proof that the design shown in the '387 Patent is novel and

15  non-obvious.

16

17

18



19

20

21

22

23

**Fig. 3**

24    34.    On June 4, 2019, the United States Patent and Trademark Office issued

25  United States Patent Number D850,640, entitled "Massage Element" (hereinafter "the

26  '640 Patent").  A true and correct copy of the '640 Patent is attached hereto as Exhibit

27  4.

28

35.     Theragun is the owner of the '640 Patent.  The '640 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 4 below.  The '640 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '640 Patent is novel and non-obvious.



**Fig. 4**

36.     On September 10, 2019, the United States Patent and Trademark Office issued United States Patent Number D859,680, entitled "Massage Element" (hereinafter "the '680 Patent").  A true and correct copy of the '680 Patent is attached hereto as Exhibit 5.

37.     Theragun is the owner of the '680 Patent.  The '680 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 5 below.  The '680 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '680 Patent is novel and non-obvious.



**Fig. 5**

38.     On July 21, 2020, the United States Patent and Trademark Office issued United States Patent Number D890,943, entitled "Massage Element" (hereinafter "the '943 Patent").  A true and correct copy of the '943 Patent is attached hereto as Exhibit 6.

Case No. 2:21-CV-01106

FIRST AMENDED COMPLAINT

39.     Theragun is the owner of the '943 Patent.  The '943 Patent pertains to a particular ornamental design for an attachment for percussive massage devices, including as depicted in Fig. 6 below.  The '943 Patent is presumed to be valid and is *prima facie* proof that the design shown in the '943 Patent is novel and non-obvious.



**Fig. 6**

40.     Theragun's patented and patent-pending devices are innovative and have received industry praise and recognition, including the 2019 A' Design Award in Digital and Electronic Devices Design for its Theragun G3PRO design.

41.     Theragun is informed and believes and based thereon alleges that Defendants began competing with Theragun in the percussive massage device industry by manufacturing and selling percussive massage apparatuses, batteries, and devices equipped with nearly identical designs to those of Theragun's patents. Specifically, Defendants manufacture and sell: 1.) head attachments nearly identical to the designs claimed in the '261 Patent, the '182 Patent, the '640 Patent, the '680 Patent, and the '943 Patent (the "First Infringing Attachment," "Second Infringing Attachment," "Third Infringing Attachment," and "Fourth Infringing Attachment," respectively) and 2.) batteries nearly identical to the design claimed in the '387 Patent (the "Infringing Battery") (collectively, the "Infringing Products").

42.     On or about June 19, 2020, Theragun first became aware of Defendants' Infringing Products through Defendants' Amazon retail page.  Since then, Theragun has seen these same infringing products being promoted in a number of locations, including on Defendants' website at www.vybepercussion.com (see images below).



43.     The Infringing Products are integral to Defendants' products, as shown in the screengrabs above taken from the Defendants' website. From this, it is apparent that Defendants have been actively advertising the Infringing Products, touting the products throughout a variety of markets and to numerous audiences. Theragun is informed and believes that Defendants sell their Infringing Products in the same marketing channels as Theragun, including online through their respective websites, on Amazon, and through social media advertising.

44.     On August 4, 2020, Theragun's counsel sent a cease-and-desist letter demanding that Defendants immediately end their use of infringing trade dress and all manufacture, offer for sale, sale, use and importation of the Infringing Products.

45.     Notwithstanding Theragun's demand and in conscious disregard of Theragun's intellectual property rights as set forth herein, Defendants have continued to use the Infringing Products and Trade Dress in conjunction with their percussive massage devices and in direct competition with Theragun.

# FIRST CAUSE OF ACTION

## Federal Trade Dress Infringement

### (15 U.S.C. § 1125(a))

46.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

47.     Theragun uses its Trade Dress in commerce on and in connection with its massage gun products, accessories therefor, and the advertising and promotion of the same.   Plaintiff's Trade Dress, described above, is comprised of distinctive features which are protected under Lanham Act § 43(a).   Plaintiff's Trade Dress is either inherently distinctive or, as a result of its use, has acquired secondary meaning whereby the relevant consuming public and the trade associate these features with a single source.

48.     As described above, Defendants have used in commerce a trade dress that is confusingly similar to Theragun's unique and protectable Trade Dress (hereinafter the "Infringing Trade Dress"), on and in connection with their sale of massage gun products and accessories therefor.   The potential for confusion is amplified by Defendants' choice to use the Infringing Trade Dress in connection with products that, in whole or in part, are copies or knock-offs of Theragun's own products.

49.     Theragun is informed and believes, and on that basis alleges, that in adopting the Infringing Trade Dress, Defendants intended to and did confuse, mislead, and/or deceive the public into believing that Theragun authorized, sponsored, approved, or licensed Defendants' use of the Infringing Trade Dress, which is not the case.

50.     These impressions created by Defendants were and are false.   In fact, Theragun has not authorized, sponsored, licensed, or given permission to Defendants to use Theragun's protected Trade Dress, or any trade dress similar thereto, in any manner whatsoever.

51.     Theragun is informed and believes, and on that basis alleges, that Defendants' conduct as alleged herein was willful and undertaken with knowledge that the Infringing Trade Dress as used by Defendants is confusingly similar to Theragun Trade Dress and that Defendants' use would confuse, mislead, and/or deceive the public into believing that Theragun somehow authorized, sponsored, approved, or licensed Defendants' conduct.

52.     As a direct and proximate result of Defendants' actions as described herein, Theragun has suffered and will continue to suffer irreparable damage to its business, reputation and good will.

53.     Theragun lacks an adequate remedy at law.

54.     Pursuant to 15 U.S.C. § 1116(a), Theragun is entitled to an order enjoining Defendants from using Theragun's Trade Dress or any trade dress similar thereto. Pursuant to 15 U.S.C. § 1117(a), Theragun is entitled to an order requiring Defendants to account to Theragun for any and all profits derived by Defendants from their actions, and to an order awarding all damages sustained by Theragun by reason of the infringement caused by Defendants.

55.     Theragun is informed and believes, and on that basis alleges, that Defendants' conduct alleged herein was intentional and in conscious disregard of Theragun's rights. Pursuant to 15 U.S.C. § 1117(a), Theragun is entitled to an award of treble damages and/or enhanced profits against Defendants.

56.     Defendants' actions described above make this an exceptional case under 15 U.S.C. § 1117(a) and, therefore, Theragun is entitled to an award of its attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Common Law Trade Dress Infringement

57.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

Case No. 2:21-CV-01106

FIRST AMENDED COMPLAINT

58.     Defendants' acts constitute common law trade dress infringement and unfair competition under state law.

59.     Theragun has been damaged and will continue to be damaged by Defendants' infringing activities.

60.     Theragun is entitled to an injunction prohibiting Defendants from continuing the infringing practices described herein, and a recall order directed to the infringing items in the marketplace.

61.     Theragun is also entitled to profits and damages arising from Defendants' wrongful use of Plaintiff's trade dress.

62.     Theragun is informed and believes, on that basis alleges, that Defendants conduct was willful, wanton, malicious, and in conscious disregard of Theragun's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### Patent Infringement of the '261 Patent

### (35 U.S.C. §§ 101 et seq.)

63.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

64.     At all times herein mentioned the '261 Patent was and is valid and fully enforceable.

65.     As shown below, a side by side comparison of figures from Theragun's '261 Patent and the design of Defendants' First Infringing Attachment as a whole quickly reveals that the First Infringing Attachment appears substantially the same as Theragun's '261 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features as the design patented in the '261 Patent that contribute to an overall appearance that is substantially the

same, including that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:



FIG. 1                FIG. 5                **First Infringing Attachment**

66.     Defendants have and continue to directly infringe the '261 Patent by making, using, offering for sale, selling and importing the First Infringing Attachment in conjunction with percussive massage devices competitive to Theragun.

67.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

68.     On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '261 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Attachment, knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '261 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '261 Patent.

69.     On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '261 Patent by, *inter alia,* marketing and promoting the First Infringing Attachment to its customers and users. The First Infringing Attachment is not a staple article or commodity of commerce

suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '261 Patent. As a result, Defendants' First Infringing Attachment has been used by their customers and by users to infringe the '261 Patent. Defendants continue to engage in acts of contributory infringement of the '261 Patent even after receiving notice of their contributory infringement.

70.    At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '261 Patent.

71.    Theragun has been damaged by Defendants' acts of infringement of the '261 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.  Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

72.    Theragun is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Attachment becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Attachment being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

73.     Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## FOURTH CAUSE OF ACTION

### Patent Infringement of the '182 Patent

### (35 U.S.C. §§ 101 et seq.)

74.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

75.     At all times herein mentioned the '182 Patent was and is valid and fully enforceable.

76.     As shown below, a side by side comparison of Theragun's '182 Patent and Defendants' First Infringing Attachment quickly reveals that the design of the First Infringing Attachment as a whole appears substantially the same as Theragun's '182 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the First Infringing Attachment has a number of the same, or very similar, features as the design patented in the '261 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and First Infringing Attachment are (a) cone shaped, (b) have the same relative dimensions (cone axial length relative to the diameter of the base), (c) have a rounded tip, and (d) have a generally circular cavity centered in the base of the attachment:

Case No. 2:21-CV-01106



FIG. 1          FIG. 2          First Infringing Attachment

77.   Defendants have and continue to directly infringe the '182 Patent by making, using, offering for sale, selling and importing the First Infringing Attachment in conjunction with percussive massage devices competitive to Theragun.

78.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

79.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '182 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Attachment, knowingly and intending that the use of the First Infringing Attachment by Defendants' customers and by users infringes the '182 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Attachment knowing that its purchase and use infringes one or more claims of the '182 Patent.

80.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '182 Patent by, *inter alia,* marketing and promoting the First Infringing Attachment to their customers and users. The First Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '182 Patent. As a result, Defendants' First Infringing Attachment has been used by their customers and by users to infringe the '182 Patent.   Defendants continue to engage in acts of

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  contributory infringement of the '182 Patent even after receiving notice of their
2  contributory infringement.

3     81.   At no time has Theragun granted Defendants authorization, license, or
4  permission to utilize the design claimed in the '182 Patent.

5     82.   Theragun has been damaged by Defendants' acts of infringement of the
6  '182 Patent and Theragun will continue to be damaged by such infringement unless
7  enjoined by this Court.   Theragun is entitled to recover damages adequate to
8  compensate for the infringement under 35 U.S.C. § 284.

9     83.   Theragun is, and has been, irreparably harmed by Defendants' ongoing
10 infringement including the following harm which cannot be quantified or recouped
11 through monetary damages: (1) lost market share that will be difficult, if not
12 impossible, to recoup later as the First Infringing Attachment becomes entrenched
13 with retail sellers and trainers who recommend them to their clients, (2) loss of first
14 mover advantage that Theragun enjoyed as the first company to offer its innovative
15 percussive devices and patented attachments, (3) loss of Theragun's investment in
16 building up the market for percussive devices and its patented attachments, (4)
17 negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect
18 on lost sales of related products, (6) price erosion due to Defendants' First Infringing
19 Attachment being sold at a price point lower than Theragun's patented product, (7)
20 diversion of resources to defend against loss of market share caused by sales of the
21 First Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing
22 others to offer for sale and sell infringing attachments that leads to additional
23 irreparable harm described above.

24    84.   Defendants' acts of infringement, including continuing the infringing
25 activities after receiving notice of Defendants' direct and indirect infringement, have
26 been, and continue to be, willful and deliberate and therefore warrant the award of
27 attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages
28 pursuant to 35 U.S.C. § 284.

# FIFTH CAUSE OF ACTION

## Patent Infringement of the '387 Patent

### (35 U.S.C. §§ 101 et seq.)

85.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

86.     At all times herein mentioned the '387 Patent was and is valid and fully enforceable.

87.     As shown below, a side by side comparison of Theragun's '387 Patent and Defendants' Infringing Battery quickly reveals that the design of the Infringing Battery as a whole appears substantially the same as Theragun's '387 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the Infringing Battery has a number of the same, or very similar, features as the design patented in the '387 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Infringing Battery have (a) rounded-triangular shaped head, (b) a cylindrical body, (c) a five-sided polygon shaped flange on two sides, (d) the polygon having the same shape, (e) three horizontal ribs on the side flanges, and (f) the horizontal ribs have the same relative lengths:



FIG. 1



VYBE

Infringing Battery

88. Defendants have and continue to directly infringe the '387 Patent by making, using, offering for sale, selling and importing the Infringing Battery in conjunction with percussive massage devices competitive to Theragun.

89. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

90. On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '387 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Infringing Battery, knowingly and intending that the use of the Infringing Battery by Defendants' customers and by users infringes the '387 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Infringing Battery knowing that its purchase and use infringes one or more claims of the '387 Patent.

91. On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '387 Patent by, *inter alia,* marketing and promoting the Infringing Battery to their customers and users. The Infringing Battery is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '387 Patent. As a result, Defendants' Infringing Battery has been used by their customers and by users to infringe the '387 Patent. Defendants continue to engage in acts of contributory infringement of the '387 Patent even after receiving notice of their contributory infringement.

92. At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '387 Patent.

93. Theragun has been damaged by Defendants' acts of infringement of the '387 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court. Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

94.     Theragun is, and has been, irreparably harmed by Defendants' on-going infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Infringing Battery becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments and batteries, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments and batteries, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Infringing Battery being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Infringing Battery, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing batteries that leads to additional irreparable harm described above.

95.     Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## SIXTH CAUSE OF ACTION

### Patent Infringement of the '640 Patent

### (35 U.S.C. §§ 101 et seq.)

96.     Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

97.     At all times herein mentioned the '640 Patent was and is valid and fully enforceable.

98.    As shown below, a side by side comparison of Theragun's '640 Patent and Defendants' Second and Third Infringing Attachments quickly reveals that designs of the Second and Third Infringing Attachments as a whole appear substantially the same as Theragun's '640 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.   Among other things, an ordinary observer would conclude that the Second and Third Infringing Attachments have a number of the same, or very similar, features as the design patented in the '640 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second and Third Infringing Attachments are (a) spherically shaped, (b) have a base with a circular design surrounding a center cavity, and (c) have a generally circular cavity centered in the base of the attachment:



99.    Defendants have and continue to directly infringe the '640 Patent by making, using, offering for sale, selling and importing the Second and Third Infringing Attachments in conjunction with percussive massage devices competitive to Theragun.

100.    Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

101.    On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of

the '640 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second and Third Infringing Attachments, knowingly and intending that the use of the Second and Third Infringing Attachments by Defendants' customers and by users infringes the '640 Patent.   For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second and Third Infringing Attachments knowing that such purchase and use infringes one or more claims of the '640 Patent.

102.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '640 Patent by, *inter alia,* marketing and promoting the Second and Third Infringing Attachments to its customers and users.  The Second and Third Infringing Attachments are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendants to be especially made or especially adapted to the infringe the '640 Patent. As a result, Defendants' Second and Third Infringing Attachments have been used by their customers and by users to infringe the '640 Patent. Defendants continue to engage in acts of contributory infringement of the '640 Patent even after receiving notice of their contributory infringement.

103.   At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '640 Patent.

104.   Theragun has been damaged by Defendants' acts of infringement of the '640 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.   Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

105.   Theragun is, and has been, irreparably harmed by Defendants' ongoing infringement, including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second Infringing Attachment and Third Infringing Attachment become entrenched with retail sellers and trainers who recommend them

to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Second Infringing Attachment and Third Infringing Attachment being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Second Infringing Attachment and Third Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that lead to additional irreparable harm described above.

106.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## SEVENTH CAUSE OF ACTION

### Patent Infringement of the '680 Patent

### (35 U.S.C. §§ 101 et seq.)

107.   Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

108.   At all times herein mentioned the '680 Patent was and is valid and fully enforceable.

109.   As shown below, a side by side comparison of Theragun's '680 Patent and Defendants' Second Infringing Attachment and Third Infringing Attachment quickly reveals that the designs of the Second and Third Infringing Attachments as a whole appear substantially the same as Theragun's '680 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him

FIRST AMENDED COMPLAINT
Case No. 2:21-CV-01106

to purchase one supposing it to be the other.  Among other things, an ordinary observer would conclude that the Second and Third Infringing Attachments have a number of the same, or very similar, features as the design patented in the '640 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Second and Third Infringing Attachments are (a) spherically shaped, (b) have a base with a circular design surrounding a center cavity, and (c) have a generally circular cavity centered in the base of the attachment:



Second and Third Infringing Attachments

110.   Defendants have and continue to directly infringe the '680 Patent by making, using, offering for sale, selling and importing the Second and Third Infringing Attachments in conjunction with percussive massage devices competitive to Theragun.

111.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

112.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '680 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Second and Third Infringing Attachments, knowingly and intending that the use of the Second and Third Infringing Attachments by Defendants' customers and by users infringes the '680 Patent.   For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Second

and Third Infringing Attachments knowing that such purchase and use infringes one or more claims of the '680 Patent.

113.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '680 Patent by, *inter alia,* marketing and promoting the Second and Third Infringing Attachments to their customers and users.  The Second and Third Infringing Attachments are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendants to be especially made or especially adapted to the infringe the '680 Patent.  As a result, Defendants' Second and Third Infringing Attachments have been used by its customers and by users to infringe the '680 Patent.  Defendants continue to engage in acts of contributory infringement of the '680 Patent even after receiving notice of their contributory infringement.

114.   At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '680 Patent.

115.   Theragun has been damaged by Defendants' acts of infringement of the '680 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court.   Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

116.   Theragun is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Second and Third Infringing Attachments become entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to

Defendants' Second and Third Infringing Attachments being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Second and Third Infringing Attachments, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

117.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

<div align="center">

**EIGHTH CAUSE OF ACTION**

**Patent Infringement of the '943 Patent**

**(35 U.S.C. §§ 101 et seq.)**

</div>

118.   Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

119.   At all times herein mentioned the '943 Patent was and is valid and fully enforceable.

120.   As shown below, a side by side comparison of Theragun's '943 Patent and Defendants' Fourth Infringing Attachment quickly reveals that the design of the Fourth Infringing Attachment as a whole appears substantially the same as Theragun's '943 Patent to an ordinary observer, and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the Fourth Infringing Attachment has a number of the same, or very similar, features as the design patented in the '943 Patent that contribute to an overall appearance that is substantially the same, including but not limited to that both the patented design and Fourth Infringing Attachment is (a) half-dome shaped, (b) have sloped portion from the dome to the attachment side, (c) have the same relative proportions of the dome to the sloped portion of the

attachment, and (d) have a generally circular cavity centered in the base of the attachment:



Fig. 4          Fourth Infringing Attachment

121.   Defendants have and continue to directly infringe the '943 Patent by making, using, offering for sale, selling and importing the Fourth Infringing Attachment in conjunction with percussive massage devices competitive to Theragun.

122.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

123.   On information and belief, at least since the filing of this Complaint, Defendants have knowingly and actively induced the infringement of one or more of the '943 Patent claims by, *inter alia,* marketing, promoting, and offering for use the Fourth Infringing Attachment, knowingly and intending that the use of the Fourth Infringing Attachment by Defendants' customers and by users infringes the '943 Patent.  For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Fourth Infringing Attachment knowing that its purchase and use infringes one or more claims of the '943 Patent.

124.   On information and belief, at least since the filing of this Complaint, Defendants have contributed to the infringement of the '943 Patent by, *inter alia,* marketing and promoting the Fourth Infringing Attachment to their customers and users.  The Fourth Infringing Attachment is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '943 Patent.  As a result,

JMBM  Jeffer Mangels Butler & Mitchell LLP

Defendants' Fourth Infringing Attachment has been used by their customers and by users to infringe the '943 Patent. Defendants continue to engage in acts of contributory infringement of the '943 Patent even after receiving notice of their contributory infringement.

125. At no time has Theragun granted Defendants authorization, license, or permission to utilize the design claimed in the '943 Patent.

126. Theragun has been damaged by Defendants' acts of infringement of the '943 Patent and Theragun will continue to be damaged by such infringement unless enjoined by this Court. Theragun is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

127. Theragun is, and has been, irreparably harmed by Defendants' on-going infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Fourth Infringing Attachment becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Theragun enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Theragun's investment in building up the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Fourth Infringing Attachment being sold at a price point lower than Theragun's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the Fourth Infringing Attachment, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

128. Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of

attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## NINTH CAUSE OF ACTION

### State Unfair Business Practices

### (Cal. Bus. & Prof. Code § 17200)

129.   Theragun realleges and incorporates by reference all paragraphs above as if fully set forth herein.

130.   Defendants' acts of trade dress and patent infringement alleged herein constitute unlawful, unfair and fraudulent business practices and misleading advertising pursuant to Cal. Bus. & Prof. Code § 17200.

131.   Theragun has been damaged and will continue to be damaged by Defendants' unlawful, unfair and fraudulent business practices and misleading advertising, as described above.

132.   Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff is entitled to an injunction prohibiting Defendants from continuing the practices described above, and restitution of all amounts acquired by Defendants by means of such wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Theragun prays for judgment as follows:

A.   For an order finding that Theragun's Trade Dress is valid and protectable;

B.   For an order finding that all Defendants have infringed Theragun's Trade Dress;

C.   For an order finding that Defendants' infringement was willful;

D.   For an order finding that the '261, '182, '387, '640, '680, and '943 Patents are valid and enforceable;

E.   For an order finding that Defendants have infringed the '261, '182, '387, '640, '680, and '943 Patents directly, literally or by equivalents, in violation of 35 U.S.C. § 271;

F.     For an order finding that Defendants' infringement is willful;

G.     For an order temporarily, preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, privies, and all others acting in concert or participation with any of them, from infringing the '261, '182, '387, '640, '680, and '943 Patents or Theragun's Trade Dress directly, contributorily and/or by inducement, or otherwise engaging in acts of unfair competition;

H.     For a judgment directing that any products in the possession, custody or control of Defendants which infringe the Theragun's Patents and/or Trade Dress be delivered up and destroyed within 30 days of entry of judgment;

I.     For a judgment directing Defendants to recall all Infringing Products and any other materials sold, distributed, advertised, or marketed which infringe Theragun's Patents and/or Trade Dress;

J.     For an order directing Defendants to file with the Court, and serve upon Theragun's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which it has complied with the injunction;

K.     For an order awarding Theragun damages adequate to compensate Theragun for the infringement by Defendants, including disgorgement of profits or gains of any kind made by Defendants from their infringing acts, lost profits and/or reasonable royalty, in amounts to be fixed by the Court in accordance with proof, including general, statutory, enhanced, exemplary, treble, and/or punitive damages, as appropriate;

L.     For an order awarding Theragun pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

M.     For an order requiring an accounting of the damages to which Theragun is found to be entitled;

1    N.    For an order declaring this to be an exceptional case pursuant to 35
2  U.S.C. § 285 and 15 U.S.C. § 1117(a) and awarding Theragun its attorneys' fees;
3    O.    For an order awarding Theragun its costs of court; and
4    P.    Granting Theragun such other and further relief as the Court may deem
5  just and proper.

6
7  DATED: April 28, 2021          GREGORY S. CORDREY
                                  ROD S. BERMAN
8                                 SHENEL OZISIK
                                  JEFFER MANGELS BUTLER & MITCHELL LLP
9

10
                                  By:    _/s/ Gregory S. Cordrey_
11                                        GREGORY S. CORDREY
                                  Attorneys for Plaintiff Theragun, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>PROOF OF SERVICE</u>

**Theagun, Inc. Penthe Company,  et al.**
**2:21-cv-01006-JAK-PD**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 3 Park Plaza, Suite 1100, Irvine, CA 92614-2592.

On April 28, 2021, I served true copies of the following document(s) described as **FIRST AMENDED COMPLAINT FOR** as follows:

Justin Mark Sobaje                          Jeanne M. Gills
Tiffany Kim Sung                            Foley and Lardner LLP
Foley and Lardner LLP                       321 North Clark Street, Suite 300
555 South Flower Street, Suite 3300         Chicago, IL  60654-4762
Los Angeles, CA  90071-2411                 Email:  jmgills@foley.com
Email:  jsobaje@foley.com; tsung@foley.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 28, 2021, at Irvine, California.


*/s/ Lynn Ortiz*
Lynn Ortiz

Case No. 2:21-CV-01106

FIRST AMENDED COMPLAINT