Justin M. Sobaje (State Bar No. 234165)
email:  jsobaje@foley.com
Tiffany K. Sung (State Bar No. 323077)
email:  tsung@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone:  213-972-4500
Facsimile:   213-486-0065

Jeanne M. Gills (*pro hac vice*)
email:  jmgills@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Telephone:  312-832-4500
Facsimile:   312-832-4700

Attorneys for **PENTHE COMPANY**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION AT LOS ANGELES

| | |
|---|---|
| **THERAGUN, INC.**, a Delaware corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>**PENTHE COMPANY**, a Delaware corporation,<br><br>            Defendant. | Case No:  2:21-cv-01006-JAK-PD<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**HEARING:**<br><br>**DATE: SEPTEMBER 20, 2021<br>TIME: 8:30 A.M.<br>COURTROOM: 10B**<br><br>**JUDGE: HON. JOHN A. KRONSTADT** |

## NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 20, 2021, at 8:30 A.M.,[1] or as soon thereafter as this matter may be heard, before the Honorable Judge John A. Kronstadt in Courtroom 10B of the United States District Court for the Central District of California, Western Division, located at 350 W. First Street, Los Angeles, CA 90012, Defendant Penthe Company ("Penthe") will move and hereby does move the Court, pursuant to Fed .R. Civ. P. 12(b)(6), to dismiss the First Amended Complaint (Dkt. No. 30) of Plaintiff Theragun, Inc. ("Theragun") for failure to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel that took place on May 12, 2021.

Defendant's Motion is made on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Jeanne M. Gills (including attached Exhibits, which are the Exhibits referenced in the Memorandum), all pleadings and papers that are of record in this case, and on such other and further evidence as may be adduced at the hearing.

Respectfully Submitted,

Dated:  May 19, 2021

/s/ *Jeanne M. Gills*
Jeanne M. Gills
Justin M. Sobaje
Tiffany K. Sung
**FOLEY & LARDNER LLP**

**Attorneys of Record for Defendant Penthe Company**

---

[1] Defendant Penthe Company's earlier filed Motion for Judicial Notice (Dkt. 29), which remains relevant to the present Motion, has been noticed for a hearing date of August 16, 2021. Defendant is willing to argue the present Motion on that same date, if the Court has time available on that date.

1

4851-0903-6778.2

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND................................................................... 2

III.  THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED ................... 4

    A.    The Legal Standards ................................................................ 4

          1.    Rule 12(b)(6) ............................................................ 4

          2.    Trade Dress Infringement Pleading Requirements............................ 4

               a.    Alleged Trade Dress Must Be Clearly Articulated ................... 5

               b.    Plaintiff Must Allege With Specificity How Its Alleged Trade Dress Is Non-Functional.......................................... 6

               c.    Plaintiff Must Allege Facts Regarding The Purported Trade Dress Having Acquired A Secondary Meaning .............. 7

               d.    Plaintiff Must Allege Sufficient Facts To Support A Finding Of Likelihood Of Confusion ................................. 9

          3.    Design Patent Infringement Pleading Requirements ........................ 10

               a.    All Figures Of A Design Patent Must Be Considered For The Ordinary Observer Test ...................................... 11

               b.    Functional Elements In A Design Patent Are Outside Of The Patent's Scope ................................................ 11

          4.    California Unfair Competition Claims Cannot Be Based On Allegations Of Patent Infringement ...................................... 12

          5.    An Unfair Competition Claim Premised On An Inadequately Pleaded Trade Dress Infringement Claim Should Be Dismissed ....... 12

    B.    Theragun's First Cause Of Action For Federal Trade Dress Infringement Should Be Dismissed .............................................. 13

          1.    Theragun Failed To Clearly Articulate The Concrete Elements Of Its Alleged Trade Dress ................................................ 14

2.	Theragun Failed To Plead Facts With Specificity As To How Its Alleged Trade Dress Is Non-Functional .......................................... 15

3.	Theragun Failed To Plead Concrete Facts Regarding Secondary Meaning ................................................................................................ 16

4.	Theragun Failed To Plead Sufficient Facts To Support A Finding Of A Substantial Likelihood Of Consumer Confusion ......... 18

C.	Theragun's Second Cause Of Action For Common Law Trade Dress Infringement And Unfair Competition Should Be Dismissed ..................... 19

D.	Theragun's Third, Fourth, Fifth, Sixth, Seventh, And Eighth Causes Of Action For Patent Infringement Should Be Dismissed ........................... 19

E.	Theragun's Ninth Cause Of Action For State Unfair Business Practices Should Be Dismissed ..................................................................... 25

IV.	CONCLUSION ................................................................................................ 25

4851-0903-6778.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018) ...................................................................9

*Alixir Co. v. Que Onda Bev., Inc.*,
No. 2:20-cv-08368-RGK-RAO, 2021 U.S. Dist. LEXIS 51844
(C.D. Cal. Jan. 6, 2021) ...........................................................................5

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ..........................................10, 11, 21

*Aromatique, Inc. v. Gold Seal, Inc.*,
28 F.3d 863 (8th Cir. 1994) .....................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)......................................................4

*Aurora World, Inc. v. TY Inc.*,
No. CV 09-08463 MMM (Ex), 2011 U.S. Dist. LEXIS 161676
(C.D. Cal. Mar. 14, 2011) ..................................................................7, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)......................................................4

*Benebone LLC v. Pet Qwerks, Inc.*,
No. 8:20-cv-00850-AB, 2020 U.S. Dist. LEXIS 250164
(C.D. Cal. Sep. 3, 2020)......................................................13, 19, 25

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) .................................................................13

*Colida v. Nokia, Inc.*,
347 F. App'x 568 (Fed. Cir. 2009) ...............................10, 12, 20, 21

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*,
942 F.3d 1119 (Fed. Cir. 2019) ............................................................10

*Contessa Food Prods. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) .....................................................11, 20

iii

*Crocs, Inc. v. ITC*,
  598 F.3d 1294 (Fed. Cir. 2010) ..................................................10

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  No. CV 15-769 PSG, 2015 U.S. Dist. LEXIS 188274
  (C.D. Cal. May 8, 2015) ...............................................9, 12, 17, 25

*Disc Golf Ass'n v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998) ......................................................6

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) (en banc) ..................................10

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) ..................................................12

*EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*,
  765 F. App'x 323 (9th Cir. 2019) ...........................................8, 17

*Greenberg v. Johnston*,
  No. CV-14-04605-MWF, 2014 U.S. Dist. LEXIS 194325
  (C.D. Cal. Oct. 22, 2014) ............................................................25

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
  No. CV 14-03954 DDP, 2014 U.S. Dist. LEXIS 156675
  (C.D. Cal. Nov. 5, 2014) ..........................................................6, 14

*Hung v. Lowe's Home Ctrs.*,
  No. CV 18-10545 SJO, 2019 U.S. Dist. LEXIS 168825
  (C.D. Cal. May 1, 2019) .........................................................11, 20

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993) ............................................................8

*Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*,
  No. CV-19-07652-MWF, 2019 U.S. Dist. LEXIS 228248
  (C.D. Cal. Dec. 4, 2019) ..........................................................6, 15

*Kittrich Corp. v. United Indus. Corp.*,
  No. CV 17-06211 DDP, 2017 U.S. Dist. LEXIS 230984
  (C.D. Cal. Oct. 18, 2017) ......................................................8, 9, 17

*Lepton Labs, LLC v. Walker*,
  55 F. Supp. 3d 1230 (C.D. Cal. 2014) ........................................5

iv

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ...................................................................8

*Loomis v. Slendertone Distribution, Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ...................................................18

*Magic Kitchen LLC v. Good Things Internat., Ltd.*,
    153 Cal. App. 4th 1144 (Cal. App. 2d Dist. July 30, 2007) ..................13

*Millennium Labs. v. Ameritox, Ltd.*,
    817 F.3d 1123 (9th Cir. 2016) ................................................................13

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
    No. 2:20-cv-04556-AB, 2020 U.S. Dist. LEXIS 219857
    (C.D. Cal. Oct. 29, 2020)...............................................................5, 14

*OddzOn Prods. v. Just Toys*,
    122 F.3d 1396 (Fed. Cir. 1997) ..............................................................12

*P & P Imps., LLC v. Festival Trading, Inc.*,
    No. CV 17-1541-DOC, 2018 U.S. Dist. LEXIS 225770
    (C.D. Cal. May 15, 2018) .........................................................6, 14, 15

*Puma SE v. Forever 21, Inc.*,
    No. CV17-2523 PSG ........................................................................6, 7, 15

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159, 115 S. Ct. 1300 (1995).................................7, 8, 16, 17

*R & A Synergy LLC v. Spanx, Inc.*,
    No. 2:17-cv-09147-SVW-AS, 2019 U.S. Dist. LEXIS 168266
    (C.D. Cal. May 1, 2019) ............................... 4, 5, 6, 7, 8, 9, 15, 17, 19

*Rachel v. Banana Republic, Inc.*,
    831 F.2d 1503 (9th Cir. 1987) ..................................................................7

*S & B Filters Inc. v. R2C Performance Prods.*,
    LLC, No. EDCV 16-1069-JFW, 2016 U.S. Dist. LEXIS 192271
    (C.D. Cal. Aug. 18, 2016)...............................................................10, 19

*Sanho Corp. v. Intelliarmor*,
    No. 8:20-cv-00735-JLS-DFM, 2020 U.S. Dist. LEXIS 199299
    (C.D. Cal. Sep. 25, 2020).................................................................11, 20

v

*SCG Characters LLC v. Telebrands Corp.*,
No. CV 15-00374 DDP, 2015 U.S. Dist. LEXIS 101287
(C.D. Cal. Aug. 3, 2015)...............................................................................10, 21

*Skechers U.S.A., Inc. v. Vans, Inc.*,
No. CV 07-01703 DSF, 2007 U.S. Dist. LEXIS 88635
(C.D. Cal. Nov. 20, 2007)...............................................................................8, 17

*Spark Indus., LLC v. Kretek Int'l, Inc.*,
No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538
(C.D. Cal. Aug. 28, 2014)...............................................................................10, 19

*Sport Dimension, Inc. v. Coleman Co.*,
820 F.3d 1316 (Fed. Cir. 2016) ......................................................................12, 20

*Sugarfina, Inc. v. Sweet Pete's LLC*,
No. 17-cv-4456-RSWL-JEM, 2017 U.S. Dist. LEXIS 156711
(C.D. Cal. Sep. 25, 2017)...................................................................5, 13, 19, 25

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*,
No. ED CV 19-1700-DMG, 2020 U.S. Dist. LEXIS 247232
(C.D. Cal. Sep. 22, 2020)..........................................................6, 8, 9, 15, 17

*Turner v. Samsung Telcoms. Am., LLC*,
No. CV 13-00629-MWF, 2013 U.S. Dist. LEXIS 198631
(C.D. Cal. Nov. 4, 2013)....................................................................................18

*Virgin Scent, Inc. v. Bel Air Nats. Care Corp.*,
No. CV 17-08284-AB, 2018 U.S. Dist. LEXIS 226095
(C.D. Cal. Feb. 8, 2018).............................................................5, 6, 7, 8, 15, 16

*Wal-Mart Stores v. Samara Bros.*,
529 U.S. 205, 120 S. Ct. 1339 (2000).............................................................8, 17

*Washoutpan.com v. Hd Supply Const. Supply Ltd.*,
No. 2:19-cv-00494-AB, 2019 U.S. Dist. LEXIS 231695
(C.D. Cal. Aug. 5, 2019).................................................................................5, 14

*Wible v. Aetna Life Ins. Co.*,
375 F. Supp. 2d 956 (C.D. Cal. 2005) ..........................................................18, 21

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
419 F.3d 925 (9th Cir. 2005) ..............................................................................8

vi

**Statutes**

15 U.S.C. § 1125(a) ................................................................13

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................25

Fed. R. Civ. P. 12(b)(6)..........................................................1, 4

vii

4851-0903-6778.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Penthe Company ("Penthe") seeks dismissal of the First Amended Complaint (Dkt. 30) ("FAC") filed by Plaintiff Theragun, Inc. ("Theragun") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[2] Theragun's second attempt at stating a viable claim against Penthe fares no better than its first, as the FAC suffers from the same deficiencies as the original Complaint (Dkt. 1).

Theragun's first cause of action for Federal trade dress infringement should be dismissed because Theragun failed to: (1) clearly articulate the concrete elements of its alleged trade dress; (2) plead facts with specificity as to how its alleged trade dress is non-functional; (3) plead concrete facts regarding secondary meaning, as its alleged trade dress based on the color blue cannot be inherently distinctive as a matter of law; and (4) plead sufficient facts to support a finding of a substantial likelihood of consumer confusion between Theragun's products and the accused products. Theragun's second cause of action based on state law should be dismissed for the same reasons as the Federal trade dress claim.

Theragun's third, fourth, fifth, sixth, seventh, and eighth causes of action for design patent infringement should be dismissed because Theragun failed to plead factual content that would allow the Court to draw a reasonable inference that Penthe is liable under the ordinary observer test, which recent decisions by the USPTO on the scope of those patents only further confirms. Theragun's ninth cause of action under Cal. Bus. and Prof. Code § 17200 should be dismissed because any claim based on alleged patent infringement is preempted by the Federal Patent Act, and any claim based on alleged trade dress infringement should be dismissed for the same reasons as the Federal trade dress claim.

---

[2] Penthe does not make, have made, use, sell, offer to sell, or import the products accused in the FAC and has never done any of those actions and, for that reason, the FAC should be dismissed with respect to Penthe. Plaintiff and Defendant are currently in discussions regarding filing a stipulation to substitute one or more other parties in place of Penthe in this case, but the present Motion to Dismiss is expected to be supported by the ultimately named defendant(s) such that the Motion will not need to be re-filed.

-1-

## II.   <u>FACTUAL BACKGROUND</u>

Theragun filed the Complaint on February 3, 2021, asserting nine causes of action. Penthe moved to dismiss the Complaint for failure to state a claim or alternatively, to stay pending *ex parte* reexaminations of the patents-in-suit. *See* Dkt. 27. Theragun then filed its FAC, asserting the same nine causes of action, but failing to correct the pleading deficiencies Penthe pointed out in its Motion to Dismiss. Penthe's original Motion to Dismiss was rendered moot (Dkt. 33) and the Motion to Stay was continued. In the meantime, the USPTO denied Penthe's *ex parte* reexamination requests, prompting Penthe to withdraw its Motion to Stay. *See* Dkt. 34. The USPTO decisions, however, further support Penthe's arguments regarding the design patent claims in its original Motion to Dismiss and Penthe is therefore bringing the present Motion.

Theragun's first asserted cause of action is for alleged Federal trade dress infringement. FAC at ¶¶46-56. The purported "Trade Dress" is alleged by Theragun to be "the blue color, the use of which is pervasive on Theragun's website, advertising, and as applied to its massage gun products and packaging as specifically described below." *Id*. at ¶14. Theragun then includes various images of packaging and massage gun products. *Id*. at ¶¶15-18. These images are different from each other and do not demonstrate a consistent use of "the blue color." *Id*. Theragun added a few images of massage gun products as compared to the original Complaint, which show yet different color arrangements. *Id*. at ¶18. While Theragun contends it has used the color blue "since at least as early as May 31, 2015," it does not allege that it has sold the particular products shown in these images since that time. *Id* at ¶13.

The FAC makes the conclusory statement that "[t]he Trade Dress, namely, the application of a distinctive color of blue to various parts of its products or packaging, is not functional" and then simply recites the elements of the legal test for determining functionality. *Id*. at ¶19. Theragun also asserts that its alleged trade dress "is either inherently distinctive, or, through Theragun's continuous use and promotion, has acquired distinctiveness, and the Trade Dress is uniquely associated with Theragun and its massage gun products," while at the same time alleging that it "offered certain special edition products with accents in other colors" and "omits the blue accents from certain of its basic product lines." *Id*. at ¶20. Theragun claims the

"Trade Dress is associated by the public exclusively with Theragun and its products and is used by the public as an indicator of the origin and quality of Theragun's massage gun products." *Id.* at ¶21. Theragun also makes the conclusory assertions that using a blue color is "likely to cause confusion or mistake" and that Penthe "did confuse, mislead, and/or deceive the public …." *Id.* at ¶¶27, 49, 51. Theragun's second asserted cause of action is purportedly for common law trade dress infringement and unfair competition, though it again makes no separate allegations from its trade dress claim. *Id.* at ¶¶57-62.

Theragun's third, fourth, fifth, sixth, seventh, and eighth asserted causes of action are for alleged design patent infringement of U.S. Patent Nos. D849,261 (Dkt. 1-1) ("the '261 Patent"), D861,182 (Dkt. 1-2) ("the '182 Patent"), D869,387 (Dkt. 1-3) ("the '387 Patent"), D850,640 (Dkt. 1-4) ("the '640 Patent"), D859,680 (Dkt. 1-5) ("the '680 Patent"), and D890,943 (Dkt. 1-6) ("the '943 Patent") (collectively "the patents-in-suit") that are related to either a "Massage Element" or a "Rechargeable Battery" design. *Id.* at ¶¶28-45, 63-128. For each allegation, Theragun only shows two figures from the asserted patent and a single side view photograph of each accused product. *Id.* Theragun failed to include additional photographs of the accused products even in light of Penthe's argument in its original Motion to Dismiss that additional views of the accused products should be considered in an ordinary observer analysis, while at the same time opposing Penthe's Motion for Judicial Notice regarding additional photographs. *See* Dkt. 27 at 18-23; Dkt. 29, Motion for Judicial Notice, at 2-3, Dkt. 32, Opposition to Motion for Judicial Notice, at 4-5. Theragun's ninth asserted cause of action is for alleged state unfair business practices under Cal. Bus. and Prof. Code § 17200, though this claim is not distinct from its patent infringement and trade dress claims. *Id.* at ¶¶129-132.

Filed concurrently herewith is a Declaration of Jeanne M. Gills ("Gills Decl.") with various Exhibits for which Penthe sought Judicial Notice in connection with its Motion to Dismiss the Complaint.[3] *See* Dkt. 29.  Exs. 1-4 of the Gills Decl. are screenshots from

---

[3] Penthe's Motion for Judicial Notice has not been withdrawn as the same documents are also relevant to the present Motion to Dismiss the First Amended Complaint.

-3-

Theragun's website showing that Theragun provides similar products with the colors red, gold, white with red, or completely black. Ex. 5 to the Gills Decl. is a screenshot of a webpage for Google image search results for the search phrase "massage gun blue," showing that the massage product industry is replete with competitors using the color blue. Exs. 6-8 to the Gills Decl. show additional views of the accused products. On February 2, 2021, Penthe filed *ex parte* reexamination requests with the USPTO for all of the patents-in-suit. Exs. 9-14 to the Gills Decl. are "Notice of Streamlined Reexamination Request Filing Date" reflecting the February 2nd filing date. Exs. 15-20 to the Gills Decl. are the USPTO decisions denying the *ex parte* reexamination requests, which identify various elements of the design patent claims.[4]

## III.  THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED

### A.  The Legal Standards

#### 1.  Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if the complaint "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are no better. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

#### 2.  Trade Dress Infringement Pleading Requirements

"To state a claim for trade dress infringement under the Lanham Act, a plaintiff must first identify the trade dress at issue." *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147-SVW-AS, 2019 U.S. Dist. LEXIS 168266, at *9 (C.D. Cal. May 1, 2019). "Once the trade dress is

---

[4] Exs. 15-20 to the Gills Decl. are the subject of Penthe's concurrently filed Request for Judicial Notice. These documents were specifically raised during the meet and confer with Theragun.

defined," the plaintiff must then plead factual content that allows the court to draw the reasonable inference that: "(1) the trade dress is nonfunctional; (2) the trade dress is inherently distinctive or has acquired a 'secondary meaning' associated with the plaintiff's product; and (3) there is a substantial likelihood of confusion among consumers between the plaintiff's product and the defendant's product." *Id.* (citation omitted); *Virgin Scent, Inc. v. Bel Air Nats. Care Corp.*, No. CV 17-08284-AB (RAOx), 2018 U.S. Dist. LEXIS 226095, at *7 (C.D. Cal. Feb. 8, 2018); *Alixir Co. v. Que Onda Bev., Inc.*, No. 2:20-cv-08368-RGK-RAO, 2021 U.S. Dist. LEXIS 51844, at *9 (C.D. Cal. Jan. 6, 2021).

### a.   <u>Alleged Trade Dress Must Be Clearly Articulated</u>

"As a threshold matter, a plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-cv-4456-RSWL-JEM, 2017 U.S. Dist. LEXIS 156711, at *10-11 (C.D. Cal. Sep. 25, 2017) (internal quotations omitted); *see also Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2020 U.S. Dist. LEXIS 219857, at *15 (C.D. Cal. Oct. 29, 2020). In other words, "'a plaintiff [must] allege[] a complete recitation of the concrete elements of its alleged trade dress' to proceed with its trade dress claim." *Sugarfina*, 2017 U.S. Dist. LEXIS 156711, at *11 (quoting *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014)). A trade dress infringement allegation should be dismissed where the "[p]laintiff has not met its burden to identify the trade dress at issue for its trade dress claim with sufficient specificity as necessary to provide adequate notice" to the defendant. *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *15 (internal quotations omitted).

Referring in a complaint to pictures of products and packaging as allegedly identifying a trade dress does not satisfy the pleading requirement to clearly articulate what comprises the claimed trade dress, because pictures are insufficient to put a defendant on notice of the asserted trade dress.[5] Indeed, Theragun's mere providing of pictures in its FAC in combination with the

---

[5] *Mosaic Brands*, 2020 U.S. Dist. LEXIS 219857, at *17 ("images and descriptions Plaintiff provides of some of its products are alone insufficient to put Defendant on notice of the asserted trade dress for those products or any others"); *Washoutpan.com v. Hd*

description of a primary color combination does not provide a sufficiently detailed description as is required to proceed with a trade dress infringement allegation.[6]

### b. **Plaintiff Must Allege With Specificity How Its Alleged Trade Dress Is Non-Functional**

"'[T]rade dress protection extends only to product features that are nonfunctional.'" *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *15-16 (quoting *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)). A claim for trade dress infringement should be dismissed, therefore, where a plaintiff fails to plead facts with specificity as to how its alleged trade dress is non-functional, and instead makes conclusory assertions regarding non-functionality. *Id.* at *15-21, *28 (dismissing first amended complaint due in part to plaintiff's failure to plead how its proposed trade dress is nonfunctional).[7]

"'Functional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made,

_____

*Supply Const. Supply Ltd.*, No. 2:19-cv-00494-AB (JEMx), 2019 U.S. Dist. LEXIS 231695, at *13-15 (C.D. Cal. Aug. 5, 2019) (rejecting argument that attaching pictures of the trade dress suffices at the pleading stage); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP (MANx), 2014 U.S. Dist. LEXIS 156675, at *8-9 (C.D. Cal. Nov. 5, 2014) (dismissing claim where photograph and description "d[id] not sufficiently identify the particular elements" sought to be protected as trade dress).

[6] *P & P Imps., LLC v. Festival Trading, Inc.*, No. CV 17-1541-DOC (JCGx), 2018 U.S. Dist. LEXIS 225770, at *24-26 (C.D. Cal. May 15, 2018). In *P & P Imports*, the plaintiff included photographs of its products in the complaint to purportedly demonstrate its alleged trade dress, but the court found that "Plaintiff's descriptions of its trade dress— pictures in combination with various primary color combinations—do not provide sufficiently 'detailed description' of Plaintiff's trade dress to proceed." *Id.* at *24-25.

[7] *See also Puma SE v. Forever 21, Inc.*, No. CV17-2523 PSG Ex, 2017 U.S. Dist. LEXIS 211140, at *15-17 (C.D. Cal. June 29, 2017) (dismissing trade dress infringement cause of action where plaintiff failed to allege how its trade dress is non-functional); *Virgin Scent*, 2018 U.S. Dist. LEXIS 226095, at *12-14 (granting motion to dismiss "because Plaintiff fails to support its conclusory allegation of non-functionality" with factual allegations); *Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*, No. ED CV 19-1700-DMG (GJSx), 2020 U.S. Dist. LEXIS 247232, at *37-39 (C.D. Cal. Sep. 22, 2020) (conclusory statement that alleged trade dress is non-functional does not satisfy pleading requirement); *Kellytoy Worldwide, Inc. v. Hugfun Int'l, Inc.*, No. CV-19-07652-MWF (MAAx), 2019 U.S. Dist. LEXIS 228248, at *12-15 (C.D. Cal. Dec. 4, 2019) (same).

sponsored, or endorsed a product.'" *Puma*, 2017 U.S. Dist. LEXIS 211140, at *14 (C.D. Cal. June 29, 2017) (quoting *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 1987)). "'The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.'" *Virgin Scent*, 2018 U.S. Dist. LEXIS 226095, at *11 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164, 115 S. Ct. 1300, 1304 (1995)). "The Ninth Circuit has developed a four-factor test to determine whether a product feature is functional: (1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantage of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *16-17 (internal quotations omitted).

The Supreme Court in *Qualitex* recognized that colors can have a utilitarian advantage, and pointed to various lower court decisions on that point such as a decision that "barred the use of black as a trademark on outboard boat motors (because black has the special functional attributes of decreasing the apparent size of the motor and ensuring compatibility with many different boat colors)." *Qualitex*, 514 U.S. at 169-70 (citation omitted). Colors can also be functional due to "aesthetic functionality," which are "product features that serve an aesthetic purpose wholly independent of any source-identifying function." *Aurora World, Inc. v. TY Inc.*, No. CV 09-08463 MMM (Ex), 2011 U.S. Dist. LEXIS 161676, at *73-78 (C.D. Cal. Mar. 14, 2011) (internal quotations omitted). The alleged trade dress in *Aurora World* involved fanciful coloring of toys, and the court granted summary judgment for defendant where the defendant "contend[ed] that the fanciful coloring of the toys … [is] aesthetically functional because [i]t is the toys' aesthetics that drive the consumer to purchase them." *Id*.

### c. Plaintiff Must Allege Facts Regarding The Purported Trade Dress Having Acquired A Secondary Meaning

Necessary to a trade dress claim is factual content that allows the court to draw the reasonable inference that the alleged trade dress "is either inherently distinctive or has acquired

-7-

a secondary meaning." *Virgin Scent*, 2018 U.S. Dist. LEXIS 226095, at *7 (C.D. Cal. Feb. 8, 2018) (internal quotations omitted). "[N]aked assertions regarding distinctiveness and secondary meaning cannot sustain a claim of trade dress infringement." *Kittrich Corp. v. United Indus. Corp.*, No. CV 17-06211 DDP (PLAx), 2017 U.S. Dist. LEXIS 230894, at *17 (C.D. Cal. Oct. 18, 2017). "[C]onclusory allegations of distinctiveness and secondary meaning" also fail. *Swift Harvest*, 2020 U.S. Dist. LEXIS 247232, at *39 (C.D. Cal. Sep. 22, 2020).

A mark is inherently distinctive if "its intrinsic nature serves to identify a particular source." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210, 120 S. Ct. 1339, 1343 (2000) (internal quotations omitted). The Supreme Court and the Ninth Circuit have both explained that colors can never be inherently distinctive. *Id*. at 211 ("with respect to at least one category of mark–colors–we have held that no mark can ever be inherently distinctive") (citing *Qualitex*, 514 U.S. at 162-163); *EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*, 765 F. App'x 323, 324 (9th Cir. 2019) ("[t]he [purported] trade dress adds nothing more than a particular color, which the Supreme Court has held cannot alone be inherently distinctive") (citing *Qualitex*, 514 U.S. at 162-63); *Skechers U.S.A., Inc. v. Vans, Inc.*, No. CV 07-01703 DSF (PLAx), 2007 U.S. Dist. LEXIS 88635, at *7 (C.D. Cal. Nov. 20, 2007) ("colors can never be inherently distinctive").

"Secondary meaning is the 'mental association by a substantial segment of consumers and potential consumers between the alleged [trade dress] and a single source of the product.'" *Swift Harvest*, 2020 U.S. Dist. LEXIS 247232, at *39 (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985)). In other words, "[s]econdary meaning occurs 'when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself.'" *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *22 (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993)). "To determine whether a product's trade dress has acquired secondary meaning, courts will consider: '(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive.'" *Id*. (quoting *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925,

-8-

930 (9th Cir. 2005)). Dismissal of a claim for trade dress infringement is warranted where a plaintiff fails to plead sufficient concrete facts that the purported trade dress has acquired a secondary meaning.[8] Moreover, an allegation of copying of trade dress cannot support an inference of secondary meaning where the alleged copier clearly labeled its own product with its own label. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 871 (8th Cir. 1994).

### d.   Plaintiff Must Allege Sufficient Facts To Support A Finding Of Likelihood Of Confusion

Just as the court in *R & A Synergy* dismissed the claim for trade dress infringement for failure to plead sufficient facts to support a finding of likelihood of confusion, so should this Court. *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *25-28. The plaintiff in that case provided two examples of alleged consumer confusion based on alleged consumer comments. *Id.* at *26. The court found that those allegations failed to support the conclusion that consumers could not tell the difference between the products. *Id.* at *26-27. The court also found that the marketing and packaging materials made the products easily discernible from each other. *Id.*

"The element of confusion is assessed as 'whether a reasonably prudent consumer would be confused about the source of the goods bearing the marks.'" *Id.* at *25 (quoting *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 755 (9th Cir. 2018)). If the defendant's packaging and

---

[8] *Kittrich*, 2017 U.S. Dist. LEXIS 230984, at *16-17 (dismissing trade dress claims where plaintiff failed to allege "concrete facts" regarding secondary meaning and explaining that plaintiff's allegations were "conclusory" when they stated that the trade dress has become associated with plaintiff's brand and that the product had widespread distribution and extensive commercial sales); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 U.S. Dist. LEXIS 188274, at *14-17 (C.D. Cal. May 8, 2015) (plaintiff had not sufficiently pled that the purported trade dress had acquired a secondary meaning); *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *21-25 (plaintiff failed to sufficiently allege enough factual matter regarding secondary meaning because allegations of successful sales of products is insufficient to equate any secondary meaning about any feature with the brand even where plaintiff had promoted the general design in its advertisements); *Swift Harvest*, 2020 U.S. Dist. LEXIS 247232, at *39-41 (explaining that general allegations of secondary meaning are inadequate, and that it is inadequate to state that packaging has "acquired a strong consumer awareness and secondary meaning" without providing concrete facts).

products prominently display the defendant's name, then that weighs very strongly against any likelihood of confusion, because "the most common and effective means of apprising intended purchasers of the source of goods is a prominent disclosure on the container, package, wrapper or label of the manufacturer's or trader's name.'" *S & B Filters Inc. v. R2C Performance Prods.*, LLC, No. EDCV 16-1069-JFW (MRWx), 2016 U.S. Dist. LEXIS 192271, at \*23-24 (C.D. Cal. Aug. 18, 2016) (internal quotations omitted).[9]

### 3.  Design Patent Infringement Pleading Requirements

"The 'ordinary observer' test is the sole test for determining whether a design patent has been infringed." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc)). The "ordinary observer" test is whether "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Design patent infringement allegations should be dismissed where a plaintiff fails to plead factual content that would allow the court to draw a reasonable inference that the defendant is liable for the alleged infringement under the ordinary observer test.[10] Moreover, a design patent

---

[9] *See also Spark Indus., LLC v. Kretek Int'l, Inc.*, No. CV 14-5726-GW(ASx), 2014 U.S. Dist. LEXIS 125538, at \*47-51 (C.D. Cal. Aug. 28, 2014) (collecting cases in which "courts have held that the prominent placement of a distinguishing word mark or brand name on arguably similar trade dress can dispel a likelihood of confusion," and explaining that the permanent and prominent display of different name logos on the products "significantly diminish the similarity of the competing trade dress").

[10] *SCG Characters LLC v. Telebrands Corp.*, No. CV 15-00374 DDP (AGRx), 2015 U.S. Dist. LEXIS 101287, at \*11-17, \*21-22 (C.D. Cal. Aug. 3, 2015) (dismissing infringement claim where "the patented design and claimed design are sufficiently distinct that it is clear that [plaintiff] cannot satisfy the ordinary observer test"); *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 928, 933-34 (Fed. Cir. 2014) (affirming dismissal for "failure to state a claim of infringement" where the district court "properly concluded that 'plain differences' exist between the accused products and the patented design" due to "dissimilarities apparent to the ordinary observer"); *Colida v. Nokia, Inc.*, 347 F. App'x 568, 569-71 (Fed. Cir. 2009) (concluding that the district court properly granted a motion to dismiss where the "infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer that an ordinary

-10-

claim should be dismissed where the plaintiff fails to provide sufficient photographs of the accused products to allow the court to draw a reasonable inference that the defendant is liable under the ordinary observer test.[11]

  **a.**  <u>**All Figures Of A Design Patent Must Be Considered For The Ordinary Observer Test**</u>

  "[T]he 'ordinary observer' analysis is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent." *Contessa Food Prods. v. Conagra, Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002). It is erroneous, therefore, to fail to consider or compare the features of the patented design from all figures when conducting an ordinary observer analysis. *Id.* In *Contessa Food*, the Federal Circuit held that it was erroneous for a district court to only consider one figure of a design patent with respect to the top of an accused product without also considering another figure of the design patent with respect to the bottom of the accused product in conducting the ordinary observer test. *Id.* at 1378-79.

  The need to compare all of the drawings of the design patent with the accused product for the ordinary observer test also applies when deciding a motion to dismiss. *Anderson*, 570 F. App'x at 933. In *Anderson*, the Federal Circuit compared both the external of a product as well as the interior of the product to find that there were dissimilarities with the patent that were apparent to the ordinary observer in the context of a motion to dismiss. *Id.*

  **b.**  <u>**Functional Elements In A Design Patent Are Outside Of**</u>

---

observer would confuse the pleaded patented designs with the accused [product]").

  [11] *Hung v. Lowe's Home Ctrs.*, No. CV 18-10545 SJO (JEMx), 2019 U.S. Dist. LEXIS 168825, at *3-5 (C.D. Cal. May 1, 2019) (granting motion to dismiss where "[p]laintiff provide[ed] a few poor quality photographs of the infringing products" such that the court did not have exhibits for comparing the allegedly infringing products with the patented design); *Sanho Corp. v. Intelliarmor*, No. 8:20-cv-00735-JLS-DFM, 2020 U.S. Dist. LEXIS 199299, at *8, *13 (C.D. Cal. Sep. 25, 2020) (granting motion to dismiss where the Court was "left to guess whether the Accused Products bear any resemblance to the Design Patents" because the first amended complaint failed to "incorporate any drawings or photographs that allow the Court to infer a plausible claim of infringement").

## The Patent's Scope

"[T]he scope of a design patent claim 'must be limited to the ornamental aspects of the design.'" *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (quoting *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)). "'Where a design [in a design patent] contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects.'" *Id.* (quoting *OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)). Functional elements of a design in a design patent, therefore, are outside of the patent's scope and are not taken into account when determining similarities in an ordinary observer analysis. *Colida v. Nokia, Inc.*, 347 F. App'x 568, 571 (Fed. Cir. 2009) ("The [accused cell phone] and the [design] patents share a folding design, but the magistrate judge correctly noted that this element is functional, not ornamental, and is therefore outside the patents' scope"). The Federal Circuit in *Colida* praised the magistrate judge for recognizing that a functional element is outside of the patents' scope in the context of a motion to dismiss. *Id.* at 569, 571.

### 4. California Unfair Competition Claims Cannot Be Based On Allegations Of Patent Infringement

State common law claims of unfair competition pursuant to Cal. Bus. and Prof. Code § 17200 are preempted by the Patent Act "unless the state law claim contains an element not shared by the federal law; an element which changes the nature of the action so that it is qualitatively different from a copyright [or patent] infringement claim." *Deckers*, 2015 U.S. Dist. LEXIS 188274, at *21 (internal quotations omitted). If the "alleged unfair conduct is simply [defendant's] unauthorized manufacture, distribution, or sale of goods that infringe on [plaintiff's] patent," then such a "theory of wrongful conduct is not 'qualitatively different' than a claim for patent infringement based on that conduct; therefore, the unfair competition claims premised on [such a] theory are preempted by the Patent Act." *Id.* at *24.

### 5. An Unfair Competition Claim Premised On An Inadequately Pleaded Trade Dress Infringement Claim Should Be Dismissed

"'[T]rade dress infringement claims under the Lanham Act and unfair competition claims

-12-

under California Business and Professions Code section 17200 are inextricably linked.'" *Benebone LLC v. Pet Qwerks, Inc.*, No. 8:20-cv-00850-AB (AFMx), 2020 U.S. Dist. LEXIS 250164, at *18-19 (C.D. Cal. Sep. 3, 2020) (quoting *Millennium Labs. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016)). This is because "'state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act.'" *Id*. at *19 (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)). Therefore, if a plaintiff's unfair competition claims are predicated on a defendant's alleged infringement of trade dress, then the unfair competition claim must be dismissed when the court determines that plaintiff has not adequately pleaded its trade dress infringement claim. *Id*. (dismissing unfair competition claim because trade dress infringement claim not adequately pleaded); *see also Sugarfina*, 2017 U.S. Dist. LEXIS 156711, at *16 (dismissing unfair competition claims to the extent the claims were premised on inadequately pleaded trade dress infringement claim). In view of the authority that state common law claims of unfair competition pursuant to Cal. Bus. and Prof. Code § 17200 are substantially congruent to claims made under the Lanham Act, there is no other separate California common law trade dress claim from an unfair competition claim. *See Magic Kitchen LLC v. Good Things Internat., Ltd.*, 153 Cal. App. 4th 1144, 1157, 1157 n. 3 (Cal. App. 2d Dist. July 30, 2007) (not resolving question but noting that "Plaintiffs contend that the state law claim most analogous to their federal trade dress infringement claim is for unfair practices under section 17200").

## B.   **Theragun's First Cause Of Action For Federal Trade Dress Infringement Should Be Dismissed**

Theragun's first cause of action for Federal Trade dress infringement under 15 U.S.C. § 1125(a) should be dismissed because Theragun failed to: (1) clearly articulate the concrete elements of its alleged trade dress; (2) plead facts with specificity as to how its alleged trade dress is non-functional; (3) plead concrete facts regarding secondary meaning, as its alleged trade dress based on the color blue cannot be inherently distinctive as a matter of law; and (4) plead sufficient facts to support a finding of a substantial likelihood of consumer confusion

-13-

between Theragun's products and the accused products. Each of these failures by Theragun is discussed below.

### 1.    Theragun Failed To Clearly Articulate The Concrete Elements Of Its Alleged Trade Dress

Theragun has not met its pleading burden to identify its alleged trade dress at issue with a complete recitation of the concrete elements of its alleged trade dress. The FAC purports to define the "Trade Dress" as "the blue color, the use of which is pervasive on Theragun's website, advertising, and as applied to its massage gun products and packaging as specifically described below." FAC at ¶14. Theragun then refers to images of packaging and indicates that the blue text is the trade dress (*id*. at ¶15) but also images of massage gun products and indicates that the blue on the handles and blue accents is the trade dress (*id*. at ¶¶16-17). However, as numerous courts have explained, referring in a complaint to pictures of products and packaging as allegedly identifying trade dress does not satisfy the pleading requirement to clearly articulate what comprises the claimed trade dress, because pictures are insufficient to put a defendant on notice of the asserted trade dress. *See, e.g., Mosaic Brands*, 2020 U.S. Dist. LEXIS 219857, at *17; *Washoutpan*, 2019 U.S. Dist. LEXIS 231695, at *13-15; *Homeland Housewares*, 2014 U.S. Dist. LEXIS 156675, at *8-9; *P & P Imports*, 2018 U.S. Dist. LEXIS 225770, at *24-26.

*P & P Imports* is instructive. When addressing plaintiff's similarly deficient pleading, the court explained that "Plaintiff's descriptions of its trade dress—pictures in combination with various primary color combinations—do not provide sufficiently 'detailed description' of Plaintiff's trade dress to proceed" and that "[b]ecause of the lack of specific description, Plaintiff's trade dress claim fails for vagueness under the Rule 8 pleading standard." *Id*. at *25-26.

The vagueness is further compounded in the present case because all of the images that Theragun refers to in its FAC for its products and packaging are different from each other, so there is no way to determine what exactly Theragun claims as its proposed trade dress. FAC at ¶¶15-18. Even within the images of the massage gun products, the color blue is displayed in different locations. While Theragun claims that the trade dress is the color blue on the handle

-14-

portion of its massage gun products, some images show massage gun products that clearly do not have any blue on the handle portion. *See id*. at ¶18. Further, Theragun claims that the trade dress is also the color blue used as an accent color "in a band encircling the arm to which the massage head attachments are attached and to the circle above said arm." *Id*. at ¶18. However, the images show products without a blue band encircling the arm and without a blue circle above said arm. *See id*. Theragun states that it has used the color blue "since at least as early as May 31, 2015," but it does not allege (at ¶13) that it has sold the particular products shown in the images in Paragraphs 15-18 since that time or that it is even still selling all of those products. Without a listing of the concrete elements of what Theragun alleges as its trade dress, it is impossible to analyze, for example, the length and manner of use of the alleged trade dress by Theragun. Theragun has therefore failed to meet its burden under the cited precedent herein to identify the alleged trade dress at issue with sufficient specificity as required by the courts.

## 2. Theragun Failed To Plead Facts With Specificity As To How Its Alleged Trade Dress Is Non-Functional

Nor has Theragun met its burden to plead facts with specificity as to how its alleged trade dress is non-functional. The FAC (at ¶19) merely makes the *conclusory* allegation that "[t]he Trade Dress … is not functional …." and recites the elements of the legal test for determining functionality. *Compare id.* at ¶19, *with R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *16-17. These conclusory allegations of non-functionality are even more deficient than the conclusory assertions in *R & A Synergy*, *Puma*, *Virgin Scent*, *Swift Harvest*, and *Kellytoy*, which were all found to fail the pleading requirements. *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *15-21; *Puma*, 2017 U.S. Dist. LEXIS 211140, at *15-17; *Virgin Scent*, 2018 U.S. Dist. LEXIS 226095, at *12-14; *Swift Harvest*, 2020 U.S. Dist. LEXIS 247232, at *37-39; *Kellytoy*, 2019 U.S. Dist. LEXIS 228248, at *12-15.

Furthermore, the color blue with respect to massage products is functional because it provides a utilitarian advantage based on psychological principles. The use of colors to affect moods, feelings, and emotions of human beings has been known since ancient times. Blue is known to bring relaxation, calmness, ease, and tranquility—which are all important feelings in

-15-

connection with a massage in which users are seeking to feel relaxed and refreshed. Theragun's bare assertion that "there is no established science connecting the use of certain colors to the production of certain moods, feelings, or emotions" and that "a given color on a product cannot reliably produce a certain emotional response" is unsupported by any factual allegations. Allowing Theragun to control a useful product feature, such as the color blue, would inhibit legitimate competition. *See Virgin Scent*, 2018 U.S. Dist. LEXIS 226095, at *11. Akin to the Supreme Court's recognition in *Qualitex* that the color black was functional for outboard boat motors because black decreases the apparent size of the motor, so does blue serve a utilitarian advantage for massage products. *Qualitex*, 514 U.S. at 169-70. Blue is likewise functional due to "aesthetic functionality," because it is known to be the favorite color of a large percentage of people. *See Aurora World*, 2011 U.S. Dist. LEXIS 161676, at *73-78. Competitors would be at a severe disadvantage if they were not able to use the color blue on massage products.

### 3.      Theragun Failed To Plead Concrete Facts Regarding Secondary Meaning

Theragun failed to plead factual content to allow the court to draw the reasonable inference that the alleged trade dress is either inherently distinctive or has acquired a secondary meaning. Akin to the Complaint, in the FAC, Theragun merely makes the following naked or conclusory allegations regarding its purported trade dress: (1) "[it] is either inherently distinctive, or, through Theragun's continuous use and promotion, has acquired distinctiveness, and the Trade Dress is uniquely associated with Theragun and its massage gun products" (FAC at ¶20); (2) "Since at least as early as May 31, 2015, Theragun has used a distinctive blue color in presenting its trademarks, in its marketing and advertising, and on its massage gun products" (*id*. at ¶13); (3) "[it] is associated by the public exclusively with Theragun and its products and is used by the public as an indicator of the origin and quality of Theragun's massage gun products" (*id*. at ¶21); and (4) "[it] is either inherently distinctive or, as a result of its use, has acquired secondary meaning whereby the relevant consuming public and the trade associate these features with a single source" (*id*. at ¶47). While the FAC adds that Theragun "has sold millions of dollars of products bearing its distinctive color blue," and that products bearing the

-16-

"distinctive color blue" were used by celebrities, athletes, and were the subject of press and advertising, it does not specify which products this applies to. *See id*. at ¶21. As discussed previously, Theragun's use of the color blue on its products is inconsistent. Thus, it is unclear from the allegations in the FAC, which products and therefore which use of the color blue has been advertised in a manner to support trade dress protection. The FAC likewise makes the conclusory statement that Penthe copied Theragun's alleged trade dress, with no alleged factual support.

Further, Theragun's assertion that its alleged trade dress is "inherently distinctive" fails as a matter of law because a color can never be inherently distinctive. *See Wal-Mart*, 529 U.S. at 210-11; *Qualitex*, 514 U.S. at 162-163; *EZ Pedo*, 765 F. App'x at 324; *Skechers*, 2007 U.S. Dist. LEXIS 88635, at *7. The intrinsic nature of a color does not serve to identify any particular source.

Theragun failed to allege any concrete facts regarding secondary meaning to indicate that when consumers see an item exhibiting the purported trade dress, they associate the item with Theragun. The most Theragun states is that "[s]ince at least as early as May 31, 2015, Theragun has used a distinctive blue color in presenting its trademarks, in its marketing and advertising, and on its massage gun products." FAC at ¶13. That statement regarding marketing and advertising as well as the few other statements identified above from the FAC are exactly the type of general allegations and conclusory statements that the courts in *Kittrich*, *Deckers*, *R & A Synergy*, and *Swift Harvest* found to be inadequate for pleading the element of secondary meaning. *Kittrich*, 2017 U.S. Dist. LEXIS 230984, at *16-17; *Deckers*, 2015 U.S. Dist. LEXIS 188274, at *14-17; *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *21-25; *Swift Harvest*, 2020 U.S. Dist. LEXIS 247232, at *39-41.

Furthermore, Theragun never alleges that it exclusively uses blue on its massage gun products, or that it consistently uses blue in the same manner on its massage gun products, but rather, admits just the opposite. *See* FAC at ¶20 ("Theragun has offered certain special edition products with accents in other colors … Theragun also omits the blue accents from certain of its basic product lines.") Then, Theragun contradicts itself and asserts that its use of the color blue

-17-

is "consistent and pervasive." *Id*. Exs. 1-4 of the Gills Decl. submitted herewith are screenshots from Theragun's website, which include the following images.[12]



Theragun's webpages show that Theragun actively associates itself with the colors red and gold for similar products, and that it also sells similar products that are white with red, or completely black. Theragun also does not assert that it is the only company selling massage gun products having the color blue, nor can it make such an assertion. Ex. 5 to the Gills Decl. is a screenshot of a webpage[13] for Google image search results for the phrase "massage gun blue," showing that the massage product industry is replete with competitors using the color blue on their products. Theragun fails to mention or address such issues.

### 4.     **Theragun Failed To Plead Sufficient Facts To Support A Finding Of A Substantial Likelihood Of Consumer Confusion**

Theragun failed to allege sufficient facts to support a finding of a likelihood of consumer

_____

[12]  The Court may properly take judicial notice of the screenshots of Theragun's website. *See Turner v. Samsung Telcoms. Am., LLC*, No. CV 13-00629-MWF (VBKx), 2013 U.S. Dist. LEXIS 198631, at *3-4 (C.D. Cal. Nov. 4, 2013). In *Turner*, the court took judicial notice of a screen capture printout of the plaintiff's webpage in connection with deciding a motion to dismiss. *Id*. at *3-5.

[13]  The Court may properly take judicial notice of the screenshot of the webpage. *See Turner*, 2013 U.S. Dist. LEXIS 198631, at *3-5; *see also Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1062-63 (S.D. Cal. 2019) (the Court *sua sponte* takes judicial notice of the printouts from an Amazon.com listing); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965-66 (C.D. Cal. 2005) (granting judicial notice over two Amazon.com webpages).

confusion. Theragun merely makes the conclusory assertions that using a blue color is "likely to cause confusion or mistake" and that Penthe "did confuse, mislead, and/or deceive the public …." FAC at ¶¶27, 49, 51. The FAC adds that the "consumers and the channels of trade and marketing are the same for both parties" but alleges no facts to support its additional conclusory allegations. Theragun's conclusory allegations regarding likelihood of consumer confusion are even more deficient than the allegations in *R & A Synergy* that were found to be deficient at the pleading stage. *R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *25-28. Moreover, different brand names and logos are prominently placed on both the Theragun products and the accused products identified in the FAC. The Theragun products and packaging shown in the images in the FAC have either the name "Theragun" or the logo "TG" or both prominently displayed to indicate Theragun, whereas the accused products in the FAC have prominent placement of the distinguishing logo of "VYBE" in huge font for VYBE brand products. FAC ¶¶ 15-17, 42. The permanent and prominent display of different name logos on the products dispels any potential likelihood of confusion. *See S & B Filters*, 2016 U.S. Dist. LEXIS 192271, at *23-24; *Spark Indus.*, 2014 U.S. Dist. LEXIS 125538, at *47-51.

## C.   Theragun's Second Cause Of Action For Common Law Trade Dress Infringement And Unfair Competition Should Be Dismissed

Theragun's second cause of action for common law trade dress infringement and unfair competition should be dismissed because there is no California common law trade dress claim separate from an unfair competition claim, and the unfair competition claim should be dismissed for the same reasons as the Federal trade dress claim. Where a plaintiff's unfair competition claims are predicated on its trade dress claim, then the unfair competition claim similarly fails. *Benebone*, 2020 U.S. Dist. LEXIS 250164, at *18-19; *Sugarfina*, 2017 U.S. Dist. LEXIS 156711, at *16. Also, in view of the authority that state common law claims of unfair competition pursuant to Cal. Bus. and Prof. Code § 17200 are substantially congruent to claims made under the Lanham Act, there is no California common law trade dress claim separate from an unfair competition claim.

## D.   Theragun's Third, Fourth, Fifth, Sixth, Seventh, And Eighth Causes Of

-19-

### Action For Patent Infringement Should Be Dismissed

Theragun's third, fourth, fifth, sixth, seventh, and eighth causes of action for design patent infringement should be dismissed because Theragun failed to plead factual content that would allow the court to draw a reasonable inference that Penthe is liable under the ordinary observer test. In particular, Theragun once again failed to provide sufficient photographs of the allegedly infringing products in the FAC, so the Court cannot infer any plausible claim of infringement from the photographs provided by Theragun. *See Hung*, 2019 U.S. Dist. LEXIS 168825, at *3-5; *Sanho*, 2020 U.S. Dist. LEXIS 199299, at *8, *13. Even in light of Penthe's arguments in its original Motion to Dismiss that the design patents have limitations in other views and that the Court must therefore consider other views of the accused products, Theragun still only provided a single side view of each accused product, while at the same time opposing Penthe's request that the Court take judicial notice of additional photographs of the accused products. *See* Dkt. 27 at 18-23; Dkt. 29, Motion for Judicial Notice, at 2-3, Dkt. 32, Opposition to Motion for Judicial Notice, at 4-5. Just as in *Hung*, this Court does not have exhibits or aids from the FAC for comparing the allegedly infringing products with the patented designs. *Hung*, 2019 U.S. Dist. LEXIS 168825, at *3-5.[14] The patent infringement claims should therefore be dismissed for failure to provide enough photograph views of the accused products to allow the Court to draw any inferences.[15]

If Theragun had provided photographs of the other views of the accused products, it

---

[14] As explained in *Contessa Food*, the ordinary observer analysis must encompass the claimed ornamental features of all figures of a design patent, so it is erroneous for a district court to only consider one figure of a design patent with respect to one side of an accused product. *Contessa Food*, 282 F.3d at 1378-79.

[15] Moreover, the side view photographs of the attachment pieces that Theragun provides in the FAC show the massage tip, or massage head, which is a functional part of the attachment piece because the shape of that part dictates the feeling of the massage. FAC at ¶¶65, 76, 98, 109, 120. Functional elements in a design patent are outside of the patent's scope and are not taken into account when determining similarities in an ordinary observer analysis. *Sport Dimension*, 820 F.3d at 1320; *Colida*, 347 F. App'x at 571. Theragun failed to provide photographs of other views of the attachment pieces, so a proper comparison is not possible from the FAC.

-20-

would be apparent that the patented designs and the accused products are sufficiently distinct such that Theragun cannot satisfy the ordinary observer test and, therefore, the patent infringement causes of action should be dismissed. *See SCG Characters*, 2015 U.S. Dist. LEXIS 101287, at *11-17, *21-22; *Anderson*, 570 F. App'x at 928, 933-34; *Colida*, 347 F. App'x at 569-71. Exs. 6-8 to the Gills Decl. show additional views of products accused of patent infringement in the FAC. "[T]he Court may consider … images of the accused products without converting the motion to dismiss into one for summary judgment." *SCG Characters*, 2015 U.S. Dist. LEXIS 101287, at *17 (citation omitted). Further, the USPTO's decisions denying Penthe's requests for *ex parte* reexamination specify various claim elements for each patent, and because each of the accused products do not meet those claim elements, Theragun's claims for patent infringement must be dismissed.[16]

The following table shows, in the first row, annotated versions of FIGS. 1-3 of the '261 Patent and, in the second row, photographs of the accused product. '261 Patent, FIGS. 1-3; FAC at ¶65; Gills Decl., Ex. 6. FIGS. 1-3 of the '261 Patent, show a protrusion or "step up" identified by the blue arrow that is close to the edge, and another protrusion or "step up" identified by the purple arrow. FIGS. 1 and 3 also show that the hole has two straight sides as identified by the green arrows and two arcing sides connecting those straight sides. In contrast, the accused product does not have any of those features. The bottom surface area identified by the red arrow is completely flat with no protrusion or "step up," and the hole is completely circular as identified by the yellow arrow with no straight sides. Plain differences exist, therefore, between the patented design and the accused product due to dissimilarities that would be apparent to an ordinary observer. The USPTO decision for the '261 Patent further supports these points and states that the claimed design has the following elements: "(D) Entire exposed edge of the raised rim is chamfered" and "(D) Narrow cylindrical element with raised rim." Ex. 17 at 6; Gills Decl., ¶25. None of these elements are present in the accused product.

---

[16] The USPTO decisions are attached as Exs. 15-20 of the Gills Decl. The Court may properly take Judicial Notice of government documents from the USPTO. *Wible*, 375 F. Supp. 2d at 965 (C.D. Cal. 2005).

-21-



The differences between the accused product and the '261 Patent also apply with respect to the '182 Patent, except the protrusion or "step up" identified by the purple arrow above is shown in dashed lines in the '182 Patent. '182 Patent, FIG. 1. Additionally, the USPTO reexamination decision for the '182 Patent states that the claimed design has a "Narrow cylindrical element with **non-circular** opening / cavity" and that the "cavity has a particular shape characterized by a generally circular perimeter **with two opposing straight sides**" (Ex. 18 at pp. 6, 8 (emphasis added); Gills Decl., ¶26) but, as explained above, the accused product has a **circular** opening with no straight sides.

The following table shows, in the first column, an annotated version of FIG. 1 of the '387 Patent and, in the second column, the circled portion of the photograph of the accused product shown in the FAC. '387 Patent, FIG. 1; FAC at ¶87. As shown in FIG. 1, the design includes an arching rectangular design element as identified by the green arrow, and also has a sloping side that intersects the arching rectangular element at a location away from the left side of the arching rectangular element as identified by the purple arrow. Such features are completely missing from the accused product and the photograph provided in the FAC is of such poor quality that it is impossible to make a comparison. Any alleged infringement is therefore facially

-22-

implausible.



The following table shows, in the first row, annotated versions of FIGS. 1-3 of the '640 Patent and, in the second row, photographs of the accused product. '640 Patent, FIGS. 1-3; FAC at ¶98; Gills Decl., Ex. 7. FIGS. 1-3 show a protrusion or "step up" identified by the blue arrow that is on top of the sphere, and another protrusion or "step up" identified by the purple arrow. FIGS. 1 and 3 also show that the hole has two straight sides as identified by the green arrows and two arcing sides connecting those straight sides. In contrast, the accused product does not have any of those features. The bottom surface area identified by the red arrow is completely flat or downward sloping with no protrusion or "step up," and the hole is completely circular as identified by the yellow arrow with no straight sides. The USPTO decision for the '640 Patent also states that the claimed design has a "(A) Narrow cylindrical element with raised rim," "(B) Lip between the spherical element and cylindrical element," and "(C) Entire exposed edge of the raised rim is chamfered," which are not present in the accused product. Ex. 15 at 5; Gills Decl., ¶23. Plain differences exist, therefore, between the patented design and the accused product due to dissimilarities that would be apparent to an ordinary observer.



-23-



The differences between the accused product and the '640 Patent also apply with respect to the '680 Patent, except the protrusion or "step up" identified by the purple arrow above is shown in dashed lines in the '680 Patent. '680 Patent, FIG. 1. Additionally, the USPTO decision for the '680 Patent recognized that an entirely circular opening is not covered by the patent and found that the claimed design includes "(A) Shallow cylindrical element with raised rim," "(B) Lip between the spherical element and cylindrical element." *See* Ex. 16 at 5, 13; Gills Decl., ¶24. The accused product clearly has an entirely circular opening and does not have a raised rim or lip, and therefore cannot infringe.

The following table shows in the first row annotated versions of FIGS. 3 and 5 of the '943 Patent, and in the second row photographs of the accused product. '943 Patent, FIGS. 3, 5; FAC at ¶120; Gills Decl., Ex. 8. FIGS. 3 and 5 show a relationship in size between an outer surface shown by the purple arrow and an outer bulge shown by the blue arrow, where the two surfaces are close in size. In contrast, no such size relationship exists in the accused product because the outer perimeter identified by the orange arrow is very small compared to the outer perimeter identified by the red arrow. Moreover, the surface in FIGS. 3 and 5 of the '943 patent identified by the green arrow is a flat surface with no steps up or down, whereas the accused product has a step up as identified by the area of the orange arrow and a step down into a hole as identified by the area of the yellow arrow. Further, the USPTO decision for the '943 Patent recognized that the claimed design "includes a ***solid*** circular surface at the end of its conical portion" and found that a design that included a circular opening was different. Ex. 19 at 9-10 (emphasis added); Gills Decl., ¶27. Plain differences therefore exist between the claimed design and the accused product due to dissimilarities that would be apparent to an ordinary observer.

-24-

FIG. 3    FIG. 5

### E.   Theragun's Ninth Cause Of Action For State Unfair Business Practices Should Be Dismissed

Theragun's ninth cause of action for state unfair business practices under Cal. Bus. and Prof. Code § 17200 should be dismissed because any such claim based on alleged patent infringement is preempted by the Federal Patent Act, and any such claim based on alleged trade dress infringement should be dismissed for the same reasons as the Federal trade dress claim. *Deckers*, 2015 U.S. Dist. LEXIS 188274, at *21-24; *Benebone*, 2020 U.S. Dist. LEXIS 250164, at *18-19; *Sugarfina*, 2017 U.S. Dist. LEXIS 156711, at *16. Moreover, to the extent that Theragun is attempting to allege "fraudulent business practices" (FAC at ¶130), such an allegation must be dismissed because Theragun does not allege any particularities of an alleged fraud. *See Greenberg v. Johnston*, No. CV-14-04605-MWF (VBKx), 2014 U.S. Dist. LEXIS 194325, at *17-18 (C.D. Cal. Oct. 22, 2014) (holding that to satisfy the requirements of Fed. R. Civ. P. 9(b) for pleading fraud, a plaintiff must allege the "who, what, when, where and how" of the alleged fraud).

## IV.   CONCLUSION

For each and all of the foregoing reasons, Penthe respectfully requests that Theragun's FAC be dismissed with prejudice.

-25-

Dated:  May 19, 2021

/s/ *Jeanne M. Gills*
Jeanne M. Gills
Justin M. Sobaje
Tiffany K. Sung
**FOLEY & LARDNER LLP**

**Attorneys of Record for Defendant
Penthe Company**

-26-